STOKER, Judge.
This is an action for damages and civil penalties for violation of the Louisiana Consumer Credit Law, LSA-R.S. 9:3510, et seq., filed by Danilo and Ivonne Alvarez against Southern Showrooms, Inc., T & H Credit, Inc., American General Finance, Inc., and Great Central Fire Insurance Company of Oakdale, Louisiana. The main issue before us is whether the defendants made bad faith violations of the Louisiana Consumer Credit Law with respect to movable property insurance purportedly sold to the plaintiffs in conjunction with their credit purchase of a sofa and loveseat. The trial judge held that the defendants’ violations were not made in bad faith or intentionally. We reverse in part.
FACTS
On February 25, 1989, plaintiffs bought a sofa and loveseat on credit from Southern Showrooms, Inc. The credit sale was financed through T & H Credit, Inc. At the same time, plaintiffs also bought credit life insurance and property insurance for their sofa set. They allege that they were told by the salesperson at Southern Showrooms, Inc. that the property insurance would cover anything that happened to their sofa set. The insurance policies were to be issued by Great Central Fire Insurance Company of Oakdale, Louisiana.
The amount financed was calculated as follows:
Cash Price $ 981.43
Cash Down Payment -181.43
Unpaid Balance of Cash Price 800.00
Credit Life Insurance 25.57
Property Insurance 76.71
Unpaid Balance Amount Financed 902.28
Finance Charge 376.20
Total Payments 1278.48
Deferred Payment Price 1459.91
*529 The financing was based on an annual percentage rate of 35.98 percent. It was payable in twenty-four monthly installments of $53.27 each.
Plaintiffs were not provided with copies of either their credit life insurance or their property insurance policy. Later, at the request of their attorney, plaintiffs were sent a copy of their credit life insurance policy on January 16, 1990. They were also given a blank and inaccurate insured’s memorandum of a property insurance policy. Apparently, their property insurance policy had either been lost or was never issued.
In December 1989, plaintiffs’ furniture was damaged by water when their water pipes froze and burst. They contacted Southern Showrooms, Inc. and T & H Credit in an attempt to obtain benefits from their property insurance. They were told that their insurance did not cover water damage. Plaintiffs stopped paying the installments due under the financing agreement as of January 25, 1990. Plaintiffs then retained an attorney who obtained the blank copy of the “insured’s memorandum” of the property insurance policy mentioned above. The memorandum of insurance stated that the policy covered damages resulting from (1) “collision, derailment or overturning of vehicle, collapse of bridges, while being transported by land vehicles”, and (2) “marine perils while on ferries and/or in cars or transfers in connection with land conveyances”. Plaintiffs later discovered that the master policy issued to T & H Credit also covered damages resulting from (1) “fire and lightening” and (2) “windstorm, cyclone, tornado, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke”. However, these coverages were not set forth in the insured’s memorandum of insurance.
By certified mail, plaintiffs notified all defendants of the apparent violations of the Louisiana Consumer Credit Law with respect to property insurance in a letter dated February 5, 1990. When defendants took no action in regard to the alleged violations, plaintiffs filed this suit against Southern Showrooms, Inc., T & H Credit, Inc., American General Finance, Inc., and Great Central Fire Insurance Company of Oakdale, Louisiana, on May 17, 1990.
Great Central Fire Insurance Company answered with a denial. Plaintiffs settled their claim against Great Central prior to trial and Great Central was dismissed from the suit.
T & H Credit answered with a general denial and asserted a reconventional demand for full payment of the balance due on plaintiff’s promissory note under the acceleration clause of the financing agreement plus 25 percent attorney fees.
Plaintiffs filed an exception of no right of action to T & H Credit’s reconventional demand alleging that T & H Credit had assigned the contract to American General Finance. The trial judge apparently held in favor of T & H Credit on the basis that the contract and promissory note had been reassigned back to T & H Credit.
American General Finance answered with a general denial and filed a cross-, claim for' indemnification against Southern Showrooms and T & H Credit. Prior to trial, T & H Credit and American General Finance stipulated that T & H Credit would be liable for any judgment rendered in favor of plaintiffs and against American General Finance.
TRIAL COURT ACTION
Following a trial on the merits, the trial judge found that defendants were not in bad faith, even though they failed to timely provide plaintiffs with a copy of their insurance and, when they finally did so, it was inaccurate since it did not reflect the full coverage set forth in the master policy. The trial judge found that there was no unconscionable or intentional violation by defendants of the Louisiana Consumer Credit Law. However, he did award plaintiffs $100, under LSA-R.S. 9:3552 A(2)(b), for T & H’s failure to respond timely to plaintiffs’ written complaint as to its “good faith” failure to timely provide, and the inaccuracy of, the written memorandum of insurance. The trial judge also granted T & H Credit’s reconventional demand, *530 awarding $691.36 for full payment of the promissory note, plus attorney fees.
Plaintiffs appeal this judgment.
OPINION
Southern Showrooms, Inc.
Initially, we note that the trial court did not err in dismissing plaintiffs’ claims against Southern Showrooms. The Louisiana Consumer Credit Law provides remedies against consumer transaction creditors, not sellers. See LSA-R.S. 9:3510, et seq. Southern Showrooms was only the seller in the transaction and, as such, plaintiffs’ claims against it were properly dismissed.
T & H Credit, Inc.
The appellants list three specifications of error alleging that the trial judge erred in: (1) holding that “collision and marine coverage” in a policy of property insurance on household furnishings bears a “reasonable relationship” to the “risk of loss” — appellants cite LSA-R.S. 9:3543 in this connection; (2) not recognizing that T & H Credit’s failure to describe the coverage purchased and to provide an insurance policy or certificate of insurance violated LSA-R.S. 9:3545 and 9:3547(1) and made it impossible for the Alvarezes to know that the coverage they had been promised was not in effect; and (3) failing to apply LSA-R.S. 9:3551 and 3552 A(l)(a) to award damages and attorney’s fees and nullify the consumer credit agreement in a case of clear violations of LSA-R.S. 9:3543, 3545, and 3547(1).
We pretermit consideration of the first specification and part of the second as we find that T & H Credit, Inc. furnished no policy at all.
LSA-R.S. 9:3552 provides sanctions for violations of the Louisiana Consumer Credit Law, LSA-R.S. 9:3510, et seq. LSA-R.S. 9:3552 A addresses violations discovered as a result of consumer complaints. In his reasons for judgment the trial judge gave some consideration to Section 3552 because he awarded $100 to plaintiffs under LSA-R.S. 9:3552 A(2)(b) based on “[T]he inadequacy of the Certificate or Memorandum of Insurance and failure to furnish timely a correction thereof....” This provision is applicable to unintentional violations or violations caused by good faith errors. In our opinion the violations of T & H Credit fall under LSA-R.S. 9:3552 A(l), which applies to intentional violations not caused by good faith errors. As we will demonstrate in the extensive discussion of the law which follows, we hold that the trial judge erred in not holding that T & H Credit acted in bad faith. Accordingly, we will reverse the judgment of the trial court in part.
The Louisiana Consumer Credit Law was enacted to protect consumers from the harsh impact of credit abuses by providing a comprehensive scheme of rate regulation. By regulating those finance charges which may be imposed in a credit transaction, it is clear that the legislature intended not only to deter unscrupulous credit practices, but also to afford the injured consumer with an affirmative vindication of his rights. Reliable Credit Corp. v. Smith, 418 So.2d 1311 (La.1982).
The Louisiana Consumer Credit Law regulates the sale of insurance in a consumer credit transaction. Property insurance is dealt with separately in LSA-R.S. 9:3543, et seq., the pertinent provisions of which follow:
§ 3543. Property insurance
A. An extender of credit may, in addition, request or require a consumer to insure property, all or part of which is involved in a contract or agreement, made under the authority of this Chapter, and include the cost of the insurance as a separate charge in the contract or agreement. This insurance and the premiums or charges thereon shall bear a reasonable relationship to the amount, term and conditions of the contract or agreement, the existing hazards or risk of loss, damage or destruction, and shall not provide for unusual or exceptional risks or coverages which are not ordinarily included in policies issued to the general public.
B. Where a consumer fails to maintain required property insurance or fails *531 to provide the creditor with timely notice of the purchase or renewal of such insurance coverage, the creditor may, after notice to the consumer and expiration of a fifteen day curative period from the mailing of said notice, purchase insurance on the customer’s property, including insurance protecting only the creditor’s interest in such property. Such insurance premiums may be added to the outstanding balance of the customer’s indebtedness and made subject to additional loan finance charges or credit service charges at the rate previously agreed to by the consumer.
[[Image here]]
§ 3545. Limitations on insurance rates; contract requirements
Any insurance provided, sold or obtained through an extender of credit shall be written at lawful rates and in accordance with the provisions of the Louisiana Insurance Code by a company authorized to do business in this state; provided, however, that such insurance may be written in accordance with R.S. 22:1257-1270 if the provisions thereof are applicable.

The contract or agreement must briefly indicate the kind, coverage, term and the amount of premium for such insurance.

* * * * * *
§ 3547. Conditions applying to insurance provided by the extender of credit

If a creditor agrees with a debtor to obtain or provide insurance

(1) the insurance shall be evidenced by an individual policy or certificate of insurance delivered to the debtor, or sent to him at his address as stated by him, within forty-five days after the term of the insurance commences; or
(2) the creditor shall promptly notify the debtor of any failure or delay in providing or obtaining the insurance, individual policy or certificate of insurance.
(Emphasis added.)
In the case before us, T & H Credit undertook to obtain or provide property insurance for plaintiffs, as evidenced by the finance charge of $76.71 for property insurance. T & H Credit had a master policy of property insurance issued by Great Central Fire Insurance Company of Oakdale, Louisiana.
According to the testimony of Ken Rus-sum, the president of T & H Credit, when a consumer-debtor agreed to purchase property insurance through T & H Credit, T & H Credit would issue a copy of the insurance, called a “Memorandum of Insurance”, in the consumer-debtor’s name. A memorandum of insurance for the life insurance purchased by plaintiffs through T & H Credit was issued in plaintiffs’ names. T & H. Credit sent plaintiffs a copy of that and had a copy in its own records. However, plaintiffs were never sent a memorandum of property insurance issued in their name, and T & H Credit was unable to produce one. Ken Russum asserted that a copy had been sent to plaintiffs, but was unable to prove it or to produce the original or an office copy. Plaintiffs testified that they never received either a memorandum of insurance or a copy of the master policy until their attorney requested one. Rus-sum admitted there was no evidence to show that a policy of property insurance was ever issued to plaintiffs except his word.
The trial judge apparently found that there was a policy of property insurance issued to plaintiffs, since he held that T & H Credit had, in good faith, violated the requirement that the creditor send the debtor a copy of the insurance within 45 days, LSA-R.S. 9:3547. We hold that the trial judge erred, as a matter of law, in finding a policy of property insurance had been issued to plaintiffs, under LSA-R.S. 9:3545, LSA-R.S. 9:3547, and LSA-R.S. 22:624. LSA-R.S. 9:3547 states that the insurance shall be evidenced by an individual policy or certificate of insurance. LSA-R.S. 9:3545 states that the kind, coverage, term and amount of premium must be briefly indicated. LSA-R.S. 9:3545 also specifically incorporates the requirements of the Louisiana Insurance Code, which states in LSA-R.S. 22:624 that, “The written instrument, in which a contract of in *532 surance is set forth, is the policy.” (Emphasis added.) It further states that the policy shall specify the names of the parties to the contract, the subject of the insurance, the time at which the insurance takes effect, the term of coverage and the premium rate. The only evidence in the record of a property insurance policy on plaintiffs’ sofa and loveseat is their premium payment receipt and Ken Russum’s oral testimony.
Given the complete lack of evidence of a written property insurance policy covering plaintiffs’ sofa and loveseat, we find that no policy was ever issued. The effective result of this is a $76.71 overcharge in plaintiffs’ finance charges. See LSA-R.S. 9:3516(4).
The significance of the failure of T & H Credit, Inc. to furnish any policy of insurance, or information as to coverage, is that appellants were not in a position to discover that they were not covered for all perils. They were left with the impression that all risks were covered as represented by the salesperson they dealt with at Southern Showrooms. Had it not been for the violation, Mr. and Mrs. Alvarez would have been alerted to the fact that they needed to obtain proper coverage from another source. The. violation deprived them of this important information.
LSA-R.S. 9:3552(A)(1)(b) states that the creditor shall be presumed to have made an intentional violation or a violation not resulting from a good faith error if, after discovering the violation through a written consumer complaint, the creditor fails to return or give credit for an overcharge in the finance charge or credit service charge. T & H Credit failed to make any reply to plaintiffs’ complaint of February 5, 1990 within the thirty day period set forth in LSA-R.S. 9:3552(A)(1)(a)(iii). T & H Credit was notified of plaintiffs’ complaint through a letter dated February 5, 1990 and sent by certified mail. A copy was sent to each defendant. At that time, T & H Credit did not own plaintiffs’ promissory note. However, it reacquired it from American General Finance on February 25, 1990. No action was ever taken to remedy the lack of an insurance policy for plaintiffs or to refund the charge for property insurance. Therefore, T & H Credit is presumed to be in bad faith, under LSA-R.S. 9:3552(A)(1)(b). T & H Credit has not rebutted this presumption with evidence of a policy issued to plaintiffs or a refund.
Accordingly, we turn now to consideration of an appropriate award of damages under LSA-R.S. 9:3552(A).
DAMAGES
Under the provisions for civil penalties set forth in LSA-R.S. 9:3552(A)(l)(a), we award to plaintiffs $452.91 as a refund of all loan finance charges or credit service charges ($1278.48 total payments — $825.57 balance on price, including life insurance), plus an amount equal to three times the loan finance charges or credit service charges ($452.91 x 3 = $1358.73) and $5000 attorney fees for trial and this appeal.
SET-OFF
Finally, we award to T & H Credit a set-off of the trial court’s award of $691.36 plus interest on its reconventional demand. Plaintiffs have not seriously contested this judgment and we see no error. Therefore, it is affirmed.
DISPOSITION
For the reasons given, the judgment of the trial court awarding $691.36 plus interest to T & H Credit is affirmed. The judgment dismissing Southern Showrooms is affirmed. The judgment of the trial court dismissing plaintiffs’ claims against T & H Credit, Inc. is reversed and plaintiffs are awarded $452.91 damages and $1358.73 penalties, plus interest, and $5000 attorney fees from T & H Credit, Inc. Costs of trial are assessed one-half to plaintiffs and one-half to T & H Credit, Inc. Costs of this appeal are assessed to T & H Credit, Inc.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.